COMMONWEALTH *vs.* GARY FORTUNE. No. 01-P-874. April 8, 2003. *Motor Vehicle,* Operating under the influence. *Constitutional Law,* Reasonable suspicion, Probable cause, Arrest. *Arrest. Probable Cause.*

Around 7:00 P.M. on June 28, 2000, the Chicopee police received a telephone report from an unidentified caller that a man appearing to be drunk was

operating a motor vehicle that had hit the curb in front of 30 Monroe Street. A police dispatcher broadcast the report. Officers who proceeded to the location mentioned in the dispatcher's broadcast found a white pickup truck angled into the curb. It blocked a driveway and a fire hydrant. The tire that was against the curb was flat.[1] The first police officer to arrive inquired of a woman who resided at 24 Monroe Street (she is not otherwise identified) who told him that the driver of the truck had gone into 28 Monroe Street. To that address the officer next directed his investigation. He asked a woman who came to the door if she knew whose truck was parked in front of her house, and she told him the driver of the truck was her friend Gary, who had just arrived. She said she would get him. The defendant Fortune came to the door. The police officer smelled alcohol on his breath and invited him to perform a field sobriety test. Fortune declined. The next day, June 29, 2000, a complaint issued charging Fortune with operating a motor vehicle while under the influence of alcohol, second offense (G. L. c. 90, § 24), as well as two other infractions of criminal law and one traffic offense.

On those facts, a judge of the District Court allowed a motion to suppress all evidence obtained by the police, including the defendant's statements and the observations of the police, on the ground that the police had "no reasonable suspicion and/or probable cause to believe a crime had been committed" and, therefore, no basis for conducting their investigation in front of 28 Monroe Street. We reverse.

That the report of an apparently drunk driver was anonymous did not require the police to ignore it. Police officers have a duty to investigate citizen reports of criminal activity, particularly if the conduct implicates the safety of the public, as drunk driving does. *Commonwealth* v. *Stoute*, 422 Mass. 782, 790 (1996). *Commonwealth* v. *Barros*, 49 Mass. App. Ct. 613, 619 (2000), *S.C.*, 435 Mass. 171 (2001). *Commonwealth* v. *Love*, 56 Mass. App. Ct. 229, 234 (2002). An anonymous tip to the police is not worthless, *ibid.*; it may be unreliable because the police know nothing about the informant, and the tip may be vacant as to the basis of knowledge of the informant. *Commonwealth* v. *Alvarado*, 423 Mass. 266, 271 (1996). *Commonwealth* v. *Lubiejewski*, 49 Mass. App. Ct. 212, 214 (2000). Smith, Criminal Practice & Procedure § 306 (Supp. 2002). Such a tip, by itself, does not provide a basis for reasonable suspicion to interrogate a person in a manner that would make the target of inquiry think, objectively, that he was not free to leave. *Commonwealth* v. *Rupp, ante* 377, 380 (2003). It does justify police questioning in circumstances where the person questioned is free to leave. *Commonwealth* v. *Thomas*, 429 Mass. 403, 406 (1999). Put differently, when a person is free to leave (or close the door), the police need no justification to conduct an interrogation. The anonymous tip gains strength if it provides detail about the offense that the informant observed, and the police may compensate for the deficiency of the informant's information through their independent investigation. *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990). *Commonwealth* v. *Barros*, 435 Mass. at 176. *Commonwealth* v. *Lubiejewski*, 49 Mass. App. Ct. at 214.

In the instant case, the informant's reports had elements of detail about the

---

[1]One of the officers testified, "the right front wheel was up on the curb and it was blown out and the bed of the truck was sticking out into the road." We analyze the case on the basis of the more muted description of the facts furnished by the motion judge.

vehicle and its eccentric arrival at its destination near 30 Monroe Street. It accorded with the duty of the police to check out what was happening on Monroe Street. The officers, as noted, could lawfully ask questions of people in the street or of persons whose door bells they rang, so long as those persons, objectively, could decline to be interviewed, were free to leave, or shut their doors. At the location on Monroe Street to which the police officers had been directed, they saw, i.e., through independent investigation, the heedless manner in which the white truck was parked. Those observations reinforced the report of impairment of the driver who had deposited the vehicle there. The flat tire confirmed the report of a hard landing. All this warranted reasonable suspicion that whoever had driven and parked the white truck in front of 28 Monroe Street was under the influence of alcohol. Beyond the baseline questioning in which the police could engage before they could entertain a reasonable suspicion based on articulable facts, the officers now were in a position to make threshold inquiries of the resident of 28 Monroe Street and of Fortune in circumstances where the object of questioning was not free to leave. *Commonwealth* v. *Hilton*, 398 Mass. 63, 68 (1986). *Commonwealth* v. *Smigliano*, 427 Mass. 490, 492 (1998). *Commonwealth* v. *Manning*, 41 Mass. App. Ct. 18, 21-22 (1996). It was reasonable to knock on the door of 28 Monroe Street to ask who owned the errantly parked truck. It would have been reasonable for the officers to insist on talking to Fortune, if for no other reason, to require him to move the truck from the fire hydrant and driveway entrance. As things developed, Fortune appears to have come to the door of his own accord. When Fortune and the officers were face to face, the evidence, taking it in the light favorable to the prosecution, was sufficient for probable cause to make an arrest.

The order allowing the motion to suppress is vacated. The case is remanded to the District Court for further proceedings.

*So ordered.*

*Bethany C. Lowe*, Assistant District Attorney, for the Commonwealth.
*Timothy M. Farris* (*William J. Lyons, Jr.*, with him) for the defendant.