COMMONWEALTH vs. MARY E. DAVIS.

No. 04-P-389.

Barnstable. January 11, 2005. - March 4, 2005.

Present: CYPHER, BROWN, & KANTROWITZ, JJ.

*Motor Vehicle,* Operating under the influence. *Search and Seizure,* Motor vehicle, Emergency, Threshold police inquiry. *Threshold Police Inquiry.*

The judge hearing a motion to suppress evidence obtained as the result of a warrantless motor vehicle stop properly denied the motion, where the information that the police officer received (i.e., that an allegedly drunk white female was operating a sport utility vehicle, with a description of the vehicle and the license plate number) was sufficient for him to conclude that an emergency existed when he saw a vehicle matching the description and plate number approaching him, requiring immediate action for the protection of the life and property of both the operator and the general public, and where his action of motioning the driver to pull over to the side of the road was reasonable and proportional given the situation. [90-91]

COMPLAINT received and sworn to in the Barnstable Division of the District Court Department on May 17, 2002.

A pretrial motion to suppress evidence was heard by *Don L. Carpenter*, J., and the case was heard by him.

*William E. Enright, Jr.,* for the defendant.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. The defendant was convicted of operating a motor vehicle while under the influence of alcohol, G. L. c. 90, § 24.[1] She argues on appeal that her motion to suppress evidence obtained as the result of a warrantless stop was improperly denied. We affirm.

*Facts.* On May 16, 2002, at approximately 4:55 P.M., Barn-

---

[1] A judge found her not responsible for drinking alcohol from an open container. G. L. c. 90, § 24I.

stable police Officer Anson Moore was working a detail. He overheard a radio transmission to be on the lookout for a white Land Rover sport utility vehicle (SUV) driven by an allegedly drunk white female, and headed in his direction on Route 28. The radio call also provided the license plate number and specified that the SUV had just left an establishment on the Barnstable-Mashpee line. The person who reported this information to the police alleged that the woman had stumbled around in the parking lot of the establishment before getting in her SUV and driving away, throwing beer cans out of the window as she did so. The identity of the reporter was not known by Officer Moore or the dispatcher.

Shortly thereafter, Moore witnessed the vehicle coming in his direction. He confirmed the vehicle make and the color, description, and plate, and he then motioned for the operator to pull over. Moore further testified that there were other vehicles on the road at that time and that he pulled the SUV over for safety concerns. The defendant was ultimately arrested.[2]

The defendant's motion to suppress evidence was denied, the judge reasoning that the stop was justified on the basis of the emergency exception to the warrant requirement. The judge cited *Commonwealth* v. *Hurd*, 29 Mass. App. Ct. 929 (1990), in support of his conclusion.

On appeal, the defendant argues that the judge's decision was error. Specifically, she claims that the emergency exception to the warrant requirement was inapplicable here because there was no evidence that an emergency existed at the time her SUV was stopped.

*The law.* " 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' *Commonwealth* v. *Hurd*, 29 Mass. App. Ct. 929, 930 (1990), quoting *Mincey* v. *Arizona*, 437 U.S. 385, 392 (1978). In justifying action under this doctrine the Commonwealth has the burden of showing, *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 227 (1992), that 'the authorities had reasonable ground to believe that an exigency existed, and . . . that the actions [of the police] . . .

[2]The defendant does not dispute the sufficiency of the evidence used to arrest and convict her.

were reasonable under the circumstances.' *Commonwealth* v. *Marchione*, 384 Mass. 8, 10-11 (1981)." *Commonwealth* v. *Morrison*, 429 Mass. 511, 515 (1999). "[W]hether an exigency existed, and whether the response of the police was reasonable and therefore lawful, are matters to be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis." *Commonwealth* v. *Young*, 382 Mass. 448, 456 (1981).

*Discussion.* Officer Moore heard a radio dispatch of a potentially drunk driver, with a description of the driver and the vehicle, and the direction in which it was headed. Although the basis for the report was an anonymous tip, under the circumstances Moore was justified in relying on the tip to make an investigatory stop to determine the report's validity.

As the motion judge observed, *Commonwealth* v. *Hurd*, 29 Mass. App. Ct. at 929, is on point. There, the police received information "from an anonymous caller that a man who appeared to be drunk was getting into a blue automobile with New Hampshire plates in front of Watch City Liquors, 475 Winter Street, Waltham. The caller said there were three small children in the automobile."

The police saw and stopped the motor vehicle. In holding that the warrantless stop was justified, the court reasoned that "[t]he circumstances detailed by the anonymous call . . . combined with the observation by police officers . . . 'presented an emergency situation requiring immediate action for the protection of life and property.' " *Id.* at 930, quoting from *Commonwealth* v. *Marchione*, 384 Mass. at 11.

As we explained in *Commonwealth* v. *Fortune*, 57 Mass. App. Ct. 923, 924 (2003), "[t]hat the report of an apparently drunk driver was anonymous did not require the police to ignore it. Police officers have a duty to investigate citizen reports of criminal activity, particularly if the conduct implicates the safety of the public, as drunk driving does." While the information provided here did not have sufficient indica of reliability that criminal activity was afoot, see *Commonwealth* v. *Lyons*, 409 Mass. 16, 19-20 (1990), it was, under the circumstances, sufficient to conclude that an emergency existed, requiring im-

mediate action for the protection of life and property of both the operator and the general public. By motioning the driver to pull over, the officer acted reasonably and proportionally given the situation. Simply put, what else was the officer to do?[3]

The defendant argues that our decision in *Commonwealth* v. *Lubiejewski*, 49 Mass. App. Ct. 212 (2000), controls. In *Lubiejewski*, we held that the trial judge should have allowed the defendant's motion to suppress evidence as the police officer "did not observe any motor vehicle infraction or erratic operation but, rather, acted solely on the basis of an anonymous telephone call reporting an earlier infraction" that the defendant was traveling on the wrong side of Route 195. *Id.* at 213. As the court further opined, however, "in the absence of any specific information that the operator of the pickup truck was intoxicated or incapacitated in some manner, once the operator returned to the correct side of the road, the emergency had ended." *Id.* at 215. The lack of information concerning alcohol distinguishes *Lubiejewski* from the case at hand.

That driving under the influence of alcohol presents a grave danger to the public cannot be gainsaid. See *Irwin* v. *Ware*, 392 Mass. 745, 756 (1984) ("the threat here [intoxicated driving] is immediate; it threatens serious physical injury; the threat is short-lived . . . ; and the plaintiffs [the motoring public] have no chance to protect themselves"); *Commonwealth* v. *Blais*, 428 Mass. 294, 298 (1998) ("A drunk driver let loose on the highways is a deadly menace, not only to the officer, but also to anyone sharing the highways with him").

Upon receiving information of a potentially intoxicated driver and shortly thereafter seeing the described motor vehicle and driver, the officer had to make a split second decision whether to beckon the driver over. Given the circumstances, he acted permissibly.

*Judgment affirmed.*

---

[3]Although it is unclear, it appears the officer was on foot, and was faced with an instantaneous decision. In the circumstances, we cannot say it was unreasonable. See *Commonwealth* v. *Gaynor*, 443 Mass. 245, 255 (2005), quoting from *Florida* v. *Jimeno*, 500 U.S. 248, 251 (1991). See also *Commonwealth* v. *Blais*, 428 Mass. 294, 297 (1998).