NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-763

COMMONWEALTH

vs.

MARVIN PINEDA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of operating under the influence of liquor (OUI), in violation of G. L. c. 90, § 24 (1) (a) (1). On appeal, he argues that the Commonwealth's evidence was insufficient to establish that he was the operator of the vehicle in question, and that the prosecutor's closing argument resulted in a substantial risk of a miscarriage of justice. We affirm.

Background. On the afternoon of April 14, 2021, a Massachusetts State police trooper was travelling along Route 3 when he heard the desk trooper broadcast "to be on the lookout for a brown Honda Accord traveling northbound on Route 3 in the Bedford stretch." After the trooper began to head in that direction, the desk trooper further broadcasted that the Accord was unable to maintain its lane.

The trooper located the car on the exit ramp from Route 3 north to Concord Road in Billerica. The trooper "observed the brown Honda Accord on the right shoulder, and it had crashed." There was damage to the car's front end, and a large State highway sign was knocked onto the ground. The defendant stood directly in front of the Accord. No one else was either inside the vehicle or in its direct vicinity. Two other cars were stopped in the shoulder in front of the Accord; neither of those two cars showed signs of being in a crash. The operators of the two stopped cars remained near their vehicles and eventually drove away.

When the trooper approached the defendant, he was speaking to his brother-in-law on a cell phone in speaker mode. The defendant's eyes were bloodshot and glassy, he was swaying back and forth, and the trooper detected "an odor of an alcoholic beverage" from him.

Because the trooper could not speak directly to the defendant due to "a language barrier," he used the defendant's brother-in-law to "interpret what [he] was saying to [the defendant] and vice versa." Assisted by the defendant's brother-in-law's interpretation, and by physically demonstrating the test himself, the trooper asked the defendant to perform, as a field sobriety test, the "one-leg stand" test. The defendant could not perform the test after five attempts, and the trooper

2

"was afraid he was going to fall over and hurt himself."  The

trooper concluded that the defendant was intoxicated and placed

him under arrest.  While transporting the defendant back to the

Concord State police barracks, the trooper yelled the

defendant's name to keep him from falling asleep in the

backseat, but the defendant was unable to stay awake.

Discussion.  1.  Sufficiency of the evidence.  "When

reviewing the denial of a motion for a required finding of not

guilty, 'we consider the evidence introduced at trial in the

light most favorable to the Commonwealth, and determine whether

a rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt.'"  Commonwealth v. Ross,

92 Mass. App. Ct. 377, 378 (2017), quoting Commonwealth v.

Oberle, 476 Mass. 539, 547 (2017).  "The relevant question is

whether the evidence would permit a jury to find guilt, not

whether the evidence requires such a finding."  Commonwealth v.

Brown, 401 Mass. 745, 747 (1988).

To establish the defendant's guilt of OUI, the Commonwealth

was required to "prove that (1) the defendant operated a motor

vehicle, (2) on a public way . . . , and (3) while under the

influence of alcohol."  Commonwealth v. Hallinan, 491 Mass. 730,

733 (2023).  Because the defendant challenges only the

sufficiency of the evidence that he operated the vehicle in

3

question, we focus only on that element.  See G. L. c. 90, § 24 (1) (a) (1); Commonwealth v. Coleman, 434 Mass. 165, 167 (2001).

The defendant contends the evidence presented at trial, even when viewed in the light most favorable to the Commonwealth, did not establish that he was the operator of the damaged brown Honda Accord.  We disagree.

"Proof of operation of a motor vehicle may rest entirely on circumstantial evidence" (quotation and citation omitted). Commonwealth v. Petersen, 67 Mass. App. Ct. 49, 52 (2006). Here, the evidence established that the brown Honda Accord collided with the highway sign just before the trooper arrived. The trooper had proceeded northbound on Route 3 after receiving two broadcasts that a brown Honda Accord was travelling along that road, in that direction, and was unable to maintain its lane.  When he arrived at the exit ramp, the trooper saw a brown Honda Accord with damage to its front and a highway sign toppled to the ground.  From this evidence, the jury could reasonably infer that the Accord had just collided with the sign.

The evidence also established that the defendant was standing in front of the Accord when the trooper arrived.  The defendant was swaying back and forth, and his eyes were bloodshot and glassy.  At the trooper's request, the defendant agreed to take the "one-leg stand" field sobriety test, and failed it.

4

"Such circumstances and facts combined with 'the defendant's cooperation with the field sobriety tests' permit an inference of operation." Commonwealth v. Manning, 41 Mass. App. Ct. 18, 22 (1996), quoting Commonwealth v. O'Connor, 420 Mass. 630, 632 (1995). There was no "evidence tending to suggest that someone other than the defendant was operating" the Accord. Commonwealth v. Cromwell, 56 Mass. App. Ct. 436, 439 (2002). No one other than the defendant was standing near that car. While two other cars had stopped on the shoulder in front of the Accord, neither showed any sign of having been in a crash. The operators of each car stayed near their vehicles, and there is no evidence that they objected to the trooper treating the defendant as the operator of the crashed Accord by subjecting him to a field sobriety test. See Cromwell, supra at 439; see also Manning, 41 Mass. App. Ct. at 22 ("Such an inference is also supported by the failure of the bystanders at the scene to dispute the defendant's identity as the operator when the officer obviously was treating him as such by administering the field sobriety tests"). Viewed as a whole, and in the light most favorable to the Commonwealth, this evidence was sufficient to permit a rational jury to find that the defendant was operating the Accord when it crashed into the highway sign on the exit ramp. See Commonwealth v. Shea, 324 Mass. 710, 713 (1949).

2. The prosecutor's closing argument. The defendant argues that the prosecutor's closing argument was improper because the suggestion the defendant could have struck a pedestrian or another motorist was speculative and inflammatory. The prosecutor stated,

> "The consequences thus far have been a street sign that was knocked over, but they could've been far worse were there a pedestrian or another motorist that got in the way of the Defendant operating the vehicle, his vehicle, in the state of mind that he was in."

We agree with the Commonwealth that this statement was "better left unsaid." "Arguments that are unsupported by the evidence and thus are speculative and conjectural are, of course, improper." Commonwealth v. Kozec, 399 Mass. 514, 522 (1987). The prosecutor's statement here improperly speculated about dangers to the public posed by the defendant's impaired driving, as opposed to the collision that did occur, and through the phrase "thus far" it arguably hinted at the public safety consequences of an acquittal.[1]

Because the defendant did not object to this statement at trial, we review to determine whether it resulted in a

---

[1] The defendant was not on trial for negligent operation. In such cases, it might be proper to argue that the defendant's manner of operation created a risk of danger that had not yet occurred. See Commonwealth v. Sousa, 88 Mass. App. Ct. 47, 51 (2015) ("The question [in a negligent operation case] is whether the defendant's driving had the potential to cause danger to the public, not whether it actually did").

substantial risk of a miscarriage of justice.  See Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 511 (2022).  An error during closing argument creates a substantial risk of a miscarriage of justice "if we have a serious doubt whether the result of the trial might have been different had the error not been made."  Commonwealth v. Silvelo, 96 Mass. App. Ct. 85, 91 (2019), quoting Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016).

Considered "in the context of the entire argument, the judge's instructions to the jury, and the evidence at trial," we conclude that the prosecutor's statement did not give rise to a substantial risk of a miscarriage of justice.  Commonwealth v. Ruiz, 442 Mass. 826, 835 (2004).  The statement was brief and "not so rousing or inflammatory as to sweep the jury beyond rational examination of the evidence."  Commonwealth v. Lassiter, 80 Mass. App. Ct. 125, 132 (2011).  The evidence that the defendant had been driving while intoxicated was strong.  In addition, the judge's instruction to the jury that closing argument is not evidence, which he provided at three separate times, mitigated "any prejudice in the final argument."  Kozec, 399 Mass. at 517.  The judge further instructed the jury that their "determination of the facts must not be based on speculation or conjecture," and they may not "guess or speculate about things about which there is no evidence."  We presume that

7

jurors follow a judge's clear instructions.  See <u>Commonwealth</u> v.

<u>Helfant</u>, 398 Mass. 214, 228 (1986).

<u>Judgment affirmed</u>.

By the Court (Vuono,
  Massing & Toone, JJ.[2]),

Assistant Clerk

Entered:  March 22, 2024.

---

[2] The panelists are listed in order of seniority.